**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO.: 6:20-cv-00836-PGB-EJK**

SURGERY CENTER OF VIERA, LLC,

     *Plaintiff*,

v.

UNITEDHEALTHCARE INSURANCE COMPANY,

     *Defendant*.

_____ /

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

     Plaintiff, Surgery Center of Viera, LLC ("SCV"), by and through undersigned counsel and pursuant to local and federal rules, responds in opposition to the Motion to Dismiss Plaintiff's Complaint ("M2D") filed by Defendant, UnitedHealthcare Insurance Company ("UHC"), on July 1, 2020 [D.E. 19], as follows:

**INTRODUCTION**

     Per the Complaint [D.E. 1], this action arises, in part (Counts III-VI), out of Defendant's incorrect and unreasonably low payment rate relating to compensation owed to the medical provider (SCV) for medical services it provided to the patient / insured (J.R.F.). This action also arises, in part (Counts I-II), out of Defendant's record production failures.

     The M2D is legally and factually (although the merits should not be adjudicated at this early dismissal stage) untenable. As discussed in detail below: **(1)** This is a pure "rate of payment" (*i.e.*, amount of compensation) dispute rather than a "right of payment" (*i.e.*, coverage) dispute. ERISA does not govern the causes of action pertaining to the outstanding

1

medical service monies owed (Counts III-VI) or the breach of contract action pertaining to outstanding germane records (Count II). The only aspect of this suit governed by ERISA is the administrative claim (Count I). The "rate of payment" versus "right of payment" distinction is the correct analysis and SCV's state law claims (Counts II-VI) are not preempted by ERISA completely, defensively, or otherwise.[1] In the "rate of payment" context, a variety of courts (Judges in this Court, Judges in the Southern District of Florida Court, and Judges from across the nation) have properly determined that for a dispute to be defensively preempted by ERISA, a mere "relation to" an ERISA plan does not cut it; *i.e.*, there must have to be a deep-dive into the plan document / insurance policy needed to resolve a dispute in order for defensive preemption to apply. And in most cases (including within this Court), most Judges have found that such a deep-dive is simply not required in order to resolve a simple pricing dispute of the

---

[1] This has been the law in Florida (state and federal) for quite some time, and confirmed yet again by a very recent Order from this Court (Judge Conway), by a very recent Report and Recommendation in the Tampa Division of this Court (Magistrate Judge Porcelli), by a very recent Order issued by this Court (Judge Berger) involving UHC, by a Report and Recommendation issued by this Court (Magistrate Judge Hoffman) that resulted in Order issued by this Court (Judge Byron), and by another recent Order issued by this Court (Judge Conway) involving UHC, all of which such cases involved undersigned counsel. *See Surgery Center of Viera, LLC v. Cigna Health and Life Ins. Co., et al.*, No. 6:19-cv-02110-ACC-DCI (M.D. Fla. Feb. 11, 2020) [D.E. 26] (expressly finding that SCV's claims do not implicate an ERISA plan and are not preempted by ERISA); *ISD Trenton, LLC v. Continental Benefits, et al.*, No. 8:19-cv-00825-JSM-AEP (M.D. Fla. Jan. 23, 2020) [D.E. 39] (expressly finding that the medical provider's claims constituted a "rate of payment" dispute not preempted by ERISA because the provider's allegations concerned a "gross underpayment" for the services rendered, as opposed to a complete failure by the Defendants to pay at all); *Surgery Center of Viera, LLC v. UnitedHealthcare, Inc., et al.*, No. 6:19-cv-00926-WWB-DCI (M.D. Fla. Mar. 18, 2020) [D.E. 40] (denying the motion to dismiss, which such motion to dismiss was focused largely on ERISA preemption); *Surgery Center of Viera, LLC v. Meritain Health, Inc., et al.*, No. 6:19-cv-1694-Orl-40LRH (M.D. Fla. June 1, 2020) [D.E. 22] and [D.E. 23] (denying the motion dismiss in all respects, other than with respect to Count I akin to Count I of the Complaint [D.E. 1] in this matter); *Surgery Center of Viera, LLC v. UnitedHealthcare*, No. 6:20-cv-00024-ACC-EJK (M.D. Fla. June 8, 2020) (denying all aspects of the motion to dismiss other than what would be Counts I and VI of the subject Complaint). These Orders and Reports and Recommendations are attached hereto as composite **Exhibit 1** and fully incorporated herein by reference. Judge Dalton has very recently taken stock (although permitting complaint amendment, still pending) in defensive preemption chatter, but the bulk of other Judges (*including Judge Byron* in his endorsement of Magistrate Judge Hoffman's Report and Recommendation, as mentioned above) within this jurisdiction have not. The bulk of Judges in this jurisdiction have found that ERISA preemption (complete, defensive, or otherwise) does not apply to pure rate of payment disputes such as the instant dispute, and, in all the decisions making up Exhibit 1, the involved Judges were faced with complete <u>and</u> defensive preemption arguments.

kind SCV brings, especially where (as here) the disputed pricing is based on any number of other non-plan contracts / formulas employed by the parties. **(2)** UHC is subject to administrative record production <u>and</u> penalties (Count I). As discussed in greater detail below, as it pertains to Count I, the particulars of this case square best with the particulars of the case involving Judge Berger's order (also involving UHC) as to Count I of that case, which such order did not dismiss a similar Count I. UHC failed to respond to Plaintiff's request for the administrative records (Count I) and other contractually owed germane records (Count II), not even producing the insurance policy pre-suit that UHC attaches to the M2D and now tries to *ex post facto* wield against SCV, especially as it pertains to the UHC failure to exhaust administrative remedies argument cast in the M2D. Finally in this vein, there is Defendant's odd argument that SCV requested some document called an "administrative record" and that ERISA does not identify an instrument called an "administrative record" amongst documents that have to be timely produced pursuant to United States Code and / or Code of Federal Regulations. As discussed below (and as made clear in Complaint averments, *see, e.g.,* [D.E. 1] at ¶ 16), SCV did not request a document called an "administrative record;" rather, SCV requested specific documents within the administrative record (sometimes called the claim file), some of which Defendant was required to produce under ERISA, *see, e.g.*, [D.E. 1 at n. 6] (hence, Count I), and all of which Defendant was required to produce under the insurance contract (*see, e.g.*, [D.E. 1] at n. 6) (hence, Count II). **(3)** There was anything but a failure to exhaust administrative remedies, this M2D argument is the epitome of misrepresentative grasping at straws. As stated in the Complaint, SCV filed both first and second level appeals to UHC. *See, e.g.,* [D.E. 1] at ¶¶ 14-15 and 19-21. Defendant did not deviate from its lowball

claim payment decision on any level of appeal, at all times maintaining the position that the subject claim was paid out properly. And as for any M2D chatter regarding SCV's second level of appeal being untimely (because the insurance policy attached to the M2D, which, again, SCV saw for the first time in relation to the M2D, supposedly says the second level appeal had to be carried out within sixty days) is of no moment (especially, for example, under equitable principles such as estoppel and waiver) because SCV could not have known that this particular insurance policy prescribed sixty days for second level appeal rather than a typical 180 days because, once more, Defendant would not give the insurance policy to SCV pre-suit. Following SCV's exhaustion of policy / plan prescribed dispute resolution measures (appeals), this lawsuit was SCV's regrettable last resort. Defendant's argument that SCV's allegations as to exhaustion of pre-suit measures are somehow generic is unavailing – as discussed below, there is nothing more to be alleged in this regard other than that SCV carried out the pre-suit appeal process and that such exhausted pre-suit administrative measures, which the Complaint alleges. *See, e.g.,* [D.E. 1] at ¶¶ 14-15, 19-21, 24. **(4)** The Complaint's breach of contract causes of action (Counts II and III) are sufficiently pleaded (as this Court has recently determined in conjunction with identical pleading structure and style in other of these kinds of cases, *see* n. 1, *supra*, and Ex. 1 attached hereto). As this Court has determined in other SCV cases (again, *see* Ex. 1), the Complaint alleges sufficient facts as it relates to the existence of the subject contracts (the insurance contract and, perhaps more importantly, the PMCS re-pricing contract for which UHC is identified as a payor client, attached as Exhibit A the Complaint), *see, e.g.,*

[D.E. 1] at ¶¶ 10-11 and 22,[2] Defendant's partial performance under the subject contracts (*i.e.*, underpayment of billed charges) in concession of both coverage and the existence and effectiveness of the subject contracts, *see, e.g., id.* at ¶¶ 12 and 22, Defendant's breaches of the subject contracts (in particularly the PMCS contract that stands alone from the plan document / insurance policy attached to the M2D) *via*, for examples, (a) its lowball payment rate, *see, e.g., id.* and Count III, (b) what aspects of the insurance contract and / or, perhaps more importantly, non-plan re-pricing contract were breached as to monies owed, *see, e.g., id.* at ¶¶ 10-11, 22 and Count III, and (c) what aspects of the insurance contract were breached as to records owed, *see, e.g., id.* at n. 6 and Count II. **(5)** As it relates to Counts IV and V (unjust enrichment and *quantum meruit*, respectively), SCV's services to the insured / patient certainly conferred a benefit on Defendant and these counts are otherwise viable and properly pleaded (again, just as this Court has recently determined in relation to identical pleading structure and style in other of these kinds of cases, including cases involving UHC and its same benefit conferral arguments made here, *see* n. 1, *supra*, and Ex. 1 attached hereto). **(6)** SCV's Section 627.64194 cause of action (Count VI) states a claim and the M2D misinterprets the statute.

## MEMORANDUM OF LAW

### A.    *Legal Standard*

In assessing Rule 12 motions to dismiss, courts are to "accept the allegations in the Complaint as true, construing them in a light most favorable to the plaintiff. … Motions to

---

[2] The M2D makes a big deal about the PMCS contract attached to the Complaint only being the part of that contract pertaining to PMCS and SCV, listing UHC as a PMCS client subject to the PMCS agreement. Only discovery will reveal UHC's other contracts with PMCS (or any other mystery third-party re-pricer it unilaterally employed in lowballing SCV, like Optum per one of the EOBs attached as Exhibit B to the M2D) because, again, UHC failed to provide such documentation (which is documentation under which the plan is operated) to SCV.

dismiss are only granted 'when the movant demonstrates beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Young v. Fleming*, 146 Fed.Appx. 393, 394-395 (11th Cir. 2005) (internal citations omitted); *Meeks v. Murphy Auto Group, Inc.*, No. 8:09-cv-1050-T-TBM, 2009 WL 3669638 at *3 (M.D. Fla. Oct. 30, 2009) (motion to dismiss "tests the legal sufficiency of a Complaint"); *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, No. 6:05-cv-1285-Orl-19DAB, 2006 WL 1640698 at *5 (M.D. Fla. June 9, 2006) (trial court "is … limited to examining the four corners of the Complaint" in assessing defendant's "very high burden" (internal citations omitted)). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) (internal citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). SCV should not be sanctioned by dismissal.

### B.    *Clearing Up M2D Misstatements*

The M2D contains a fair bit of inaccurate statements:[3]

| UHC MISSTATEMENT | REALITY |
|---|---|
| "Plaintiff is non-participating or out of network meaning that Plaintiff and United have not agreed to any terms or conditions including, but not limited to, rates for any medical services provided by Plaintiff… ." [D.E. 19] at 1. | UHC agreed with SCV on a fee / pricing structure developed by PMCS. *See, e.g.,* [D.E. 1] at ¶¶ 10-11, 22. |
| "Plaintiff's allegation that the PMCS contract required payment of 80% of billed charges is also misleading. … Based on this mischaracterization, Plaintiff seeks from United (who is not a party to the PMCS contract) the difference between what it was paid and 80% of its billed charges." [D.E. 19] at 2. | The Complaint makes no such allegation; rather, the Complaint makes clear that the 80% PMCS rate is subject to deduction of patient responsibilities (*e.g.,* co-pay, deductible, *et cetera*). *See, e.g.,* [D.E. 1] at ¶ 11, 22. And the amount of money SCV seeks, *see, e.g., id.* at ¶ 22, is not flawed. As Paragraph 22 of the Complaint makes clear, the PMCS re-priced amount is subject to deduction of patient responsibilities. But, as |

---

[3] In this table, we do not rebut Defendant's myriad legal misstatements. Other areas of this response do so.

| | Paragraph 22 of the Complaint also makes clear, if UHC's claim processing was done in a routine fashion, then Defendant's partial payment already accounted for deduction of patient responsibilities. |
|---|---|
| "Plaintiff generically alleges that is 'exhausted the pre-suit appeal process to the best of its ability." [D.E. 19] at 4 (emphasis omitted). | There is nothing generic about Paragraphs 14-15, 19-21, 24 of the Complaint, which establish that SCV put forth two appeal packages in a timely fashion ("timely," because, again, there was no way for SCV to know about an unusual sixty day second level appeal requirement sans the germane documentation, namely the insurance policy, that were requested of UHC pre-suit and not provided) and those Complaint averments cite Defendant's wayward appeals decisions. There is just nothing more to say other than stating that SCV's two pre-suit appeals satisfied pre-suit administrative requirements on SCV's end. Moreover, even if the Court takes stock in the sixty day bit pertaining to the second level appeal (*i.e.*, wields the insurance policy attached to the M2D against SCV despite SCV's having never seen same prior to the M2D), the language of the insurance policy attached to the M2D makes clear that the second level appeal was voluntary anyway. All throughout the insurance policy attached to the M2D, the policy says there is a "right" to put forth a second appeal, not that one must put forth a second appeal. |

## C.    *Plaintiff's Record Production Claim (Count I) Does Not Fail*

The M2D attacks Count I *via* the following misguided arguments: **(1)** civil penalties do not apply to the "administrative record," and **(2)** SCV lacks standing to bring Count I.

Defendant first argues that Title 29, United States Code, Section 1132(c)(1) does not apply to the entirety of the "administrative record" requested by SCV. Defendant recognizes that a plan administrator is liable for civil penalties under the aforementioned statute when it fails or refuses to provide the documents listed under Title 29, United States Code, Section

1024. In purported support, Defendant relies on *Giertz-Richardson v. Hartford Life & Accident Ins. Co.*, No. 8:06-cv-1874-T-24MAP, 2007 WL 1099094, at *4 (M.D. Fla. Apr. 10, 2007):

> Section 1132(c) does not authorize penalties in connection with any and all types of information requested by the participant; rather, it refers specifically to a plan administrator's 'failure or refusal to provide the documents identified in Section 1024 [of ERISA], namely the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.'

Defendant argues that the entirety of the documents sought by SCV in pre-suit correspondence is classified as documents falling under Title 29, Code of Federal Regulations, 2560.503-1(h)(2), which requires that a claimant be provided "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." *Defendant glosses over the fact that it failed to respond in any fashion to SCV's January 12, 2018, documentation / information letter request.*

SCV did not request some instrument called an "administrative record." Rather, SCV requested specific germane documentation / information often housed (in whole or in part) in the carrier's claim / appeals file; *i.e.*, administrative record. *See* [D.E. 1] at ¶ 16. SCV's January 12, 2018, letter specifically requested the insurance policy, along with a number of other documents relevant to the claim and appeals decisions, subject to production either under the Federal Codes cited in Count I or under the insurance contract.[4] *See* [D.E. 1] at ¶ 16. The Complaint alleges a *total failure* by Defendant to respond to SCV's data request.

Defendant attempts to evade civil penalties by oddly distinguishing SCV's request as being one for the "administrative record" fails because, under the law, Defendant is subject to

---

[4] *See* [D.E. 1], n. 6 and also the language cited below from Exhibit A of the M2D.

penalty for not providing, for example, several (if not all) of the specific documents enumerated in SCV's January 12, 2018, letter. For example, it cannot reasonably be disputed that Defendant was obligated under ERISA to produce a certified or authenticated copy of the subject insurance policy. *See* [D.E. 1] at ¶ 16 (Request No. 1). Defendant did not do so. As another example, it cannot reasonably be disputed that Defendant was obligated under ERISA to produce the materials upon which it formulated the disputed rate of payment. *See id.* (Request Nos. 14-15). Defendant did not do so. And then there is ERISA's catch-all "other instruments under which the plan is established or operated" language, which such catch-all could be reasonably interpreted to capture a variety of other documents requested in SCV's January 12, 2018, letter. As a result, SCV has made a valid claim for penalty and production.[5]

Next, the M2D argues that SCV does not have standing to pursue Count I. That is false. While an assignment of benefits by itself may not allow for pursuit of administrative records and / or penalty, the patient's conveyance of those rights to the provider can be effectuated through things like authorization, as recognized by, for example, Judge Berger's decision. *See* Ex. 1 (Judge Berger's March 18, 2020, Order at 3-4). And SCV alleges authorization in addition to assignment. SCV's allegations at the dismissal stage are to be taken as true, not only because they are true but also because that is the legal standard (*see* Section A, *supra*).

A complaint is not supposed to be an evidence dump, as the M2D oddly suggests by stating that SCV should have attached assignment and authorization paperwork. The Complaint properly alleges that SCV possesses authorization and assignment. Moreover, the

---

[5] Again, while ERISA-prescribed production requirements <u>and</u> penalties would arguably only apply to some of the data requested in SCV's January 12, 2018, letter (hence, Count I), the insurance contract would require production of all the data requested in SCV's letter (hence, Count II).

HCFA form that was part of the claim mailing packet noted in the Complaint checked the appropriate assignment of benefits box. Moreover, Defendant recognized / consented to SCV's standing by remitting partial payment directly to SCV, which is also alleged in the Complaint. But if SCV's allegations are not to be taken as true (in contravention of the legal standard set forth above), we attach hereto as **Exhibit 2** the assignment / authorization that does not just convey owed insurance benefits to SCV, but also conveys all rights to SCV (such as requesting and obtaining germane documentation and bringing suit).

First, any insurance contract (attached to the M2D for the first time) prohibition as to authorization or assignment should not be wielded against SCV (under at least ordinary principles of estoppel or waiver) because Defendant did not properly produce same to SCV pre-suit. Second, in the vein of waiver (at the very least), as mentioned above, Defendant tendered partial payment directly to SCV, thereby constituting UHC's consent to assignment. Third, assuming *arguendo* we were to *ex post facto* consider the insurance policy attached to the M2D, the insurance policy says that assignment of benefits can occur with UHC's consent or discretion. *See* [D.E. 19], Ex. A at 49. Critically, the insurance policy says that if an assignment is not obtained, payment will be sent directly to the patient. *See id.* Because there was a consented to assignment in place here, Defendant, as alleged in the Complaint, tendered partial payment directly to SCV. Rather (and moreover), the insurance policy expressly says that authorized representation is acceptable in pursuit of owed medical service monies, *see id.* at III, and we see nowhere in the insurance policy where such authorized representative capacity is somehow curbed. And, as it pertains to production of germane documentation, the insurance policy makes clear that that responsibility belonged to UHC. *See* [D.E. 1] at n. 6;

[D.E. 19], Ex. A at 51 ("Upon request and free of charge, you have the right to reasonable access to and copies of all documents, records and other information relevant to your claim for Benefits …" with "we" being defined as UHC). Fourth, the bulk of the Complaint (Counts II-VI) is properly pleaded under state law and a purported anti-assignment clause meant to pertain to ERISA actions cannot give way to Florida state law. It has long been Florida law that it is perfectly acceptable to assign insurance policy benefits, but not insurance policies themselves. *See, e.g.,* Fla. Stat. § 627.638 (making abundantly clear, in particularly Subsection 2, that health insurance companies must honor assignments of benefits and insurance policies cannot prescribe otherwise). Meaning, any ERISA-oriented case law that purports to slam the door shut on assignment in draconian fashion (and hostile doctor-patient fashion) simply does not apply here, at the very least with respect to Counts II-VI pleaded by SCV under state law.

Accordingly, as to Count I, this is a situation most akin to Count I of the complaint at issue in Judge Berger's order (*see* Exhibit 1), which such order allowed Count I to stand.

**D.      *Plaintiff's State Law Claims Are Not Preempted by ERISA***

The M2D advances an incorrect ERISA preemption analysis. To save a great deal of time for all involved, we point the Court to the very recent rulings making up Exhibit 1 and fully incorporate same herein by reference. All rulings from this Court making up Exhibit 1 correctly recognized that a "rate of payment" dispute is not governed by ERISA, and all such rulings were made in contexts wherein the defendants had raised both complete *and defensive* preemption arguments. *See also, e.g., Reva, Inc. v. Healthkeepers, Inc., et al.*, No. 17-24158-CIV-MORENO, 2018 WL 3323817 (S.D. Fla. Jul. 6, 2018); *Emergency Services of Zephyrhills, P.A., et al. v. Coventry Health Care of Florida, Inc.*, 281 F. Supp. 3d. 1339 (S.D.

Fla. 2017); *Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, No. 8:18-CV-621-T-35AAS, 2019 WL 1499176 (M.D. Fla. Mar. 29, 2019); G*ulf-To-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Florida, Inc.*, No. 8:18-cv-233-EAK-AAS, 2018 WL 3640405 (M.D. Fla. Jul. 20, 2018)*; Sarasota Anesthesiologists, P.A. v. Blue Cross and Blue Shield of Florida, Inc.*, No. 19-cv-1518-T-02JSS, 2019 WL 3683796 (M.D. Fla. Aug. 6, 2019).

As the Complaint makes clear, this dispute (at least Counts III-VI) revolves entirely around the *amount* of compensation Defendant afforded to SCV in relation to medical services provided by SCV to the patient / insured. Again, the large "rate of payment" gap between the amount billed by SCV and the amount paid by Defendant is not the result of any coverage denial by Defendant (like in *Borrero*, which such Eleventh Circuit case made clear that preemption occurs on medical necessity oriented coverage grounds, which is not the case here). This much is admitted by Defendant *via* its partial claim payment and its EOBs not asserting any medical judgment bases (*i.e.*, "right of payment" bases) for the claim decision. It is also conceded by the M2D, as such advances no substantive arguments relating to coverage / "right of payment;" *e.g.*, medically unnecessary, experimental / investigational. "No substantive" because all the M2D nakedly states is that some of the HCFA line-items were flat denied. But a proper examination of the EOB claim decision codes (Ex. B of [D.E.19]) makes clear that any $0.00 pay HCFA line-items had nothing to do with coverage; rather, such had to do with things like fee schedules, application of patient responsibilities, re-pricing performed by third-party repricing vendor Optum (owned by UHC). Defendant has refused to substantiate the rate of payment lowballing ($48,257.58 paid versus $396,597.00 billed) notwithstanding its having been asked for such explanation / justification / proof pre-suit due to the acute germaneness of

same. And, yet, Defendant somehow has the audacity to mischaracterize (in inflammatory fashion) SCV as "prolific." *See* [D.E. 19] at 15.[6]

It is around the $48,257.58 (paid) versus $396,597.00 (billed) lowballing that Counts III-VI revolve. As discussed above, "rate of payment" disputes are not governed by ERISA in the Eleventh Circuit. As this Court has recently confirmed (again, including in at least two cases involving UHC, *see* Ex. 1), Defendant's arguments concerning defensive versus complete ERISA preemption do not influence or control the rate of payment ERISA exemption or the fact that this case concerns a rate of payment dispute. *See, e.g.,* Ex. 1 (in particularly Judge Conway's February 11, 2020, Order); *Gulf-To-Bay Anesthesiology Assocs., LLC*, 2018 WL 3640405, *3 (this Court found defendant complete and defensive ERISA preemption arguments unavailing where, as here, "the gist of GTB's complaint is that it was not *fully* compensated for those services pursuant to Florida law," emphasis in original); *Gables Ins. Recovery, Inc. v. United Healthcare Ins. Co.*, No. 13-21137-CIV-KING, 2013 WL 12141255, *1-2 (S.D. Fla. May 22, 2013) (finding defendant defensive and complete ERISA preemption arguments unavailing where, as here, "Plaintiff explicitly alleges that this lawsuit is about Defendants failure to pay for medical services … . Plaintiff's claims are about 'rate of payment' and not the 'right of payment.'  Only 'right of payment' disputes are subject to … preemption," internal citations omitted). And it not just the majority of Judges in this Court, a plethora of other courts in other jurisdictions have found a rate dispute of this nature must go deeper than

---

[6] If UHC (or any other insurance company) wishes for SCV to not be "prolific," it could stop with its perpetual bad faith claim payment lowballing. "Prolific," in this sense, is the pot calling the kettle black.

merely "relating to" (a phrase repeatedly utilized in the M2D) an ERISA plan (heck, there is an ERISA plan underlying practically all, if not all, of these kinds of disputes).[7]

As it stands, the Complaint is well-pleaded in line with what this very Court (*see, e.g.,* Ex. 1 and *Gulf-To-Bay*) has already accepted – the Complaint sets forth counts around an express agreement (Counts II and III) and counts around implied-in-fact agreement and failure to reimburse fair value (Counts IV-V) and a statutory count (Count VI). Put in the *Gulf-To-*

---

[7] The M2D states in myriad places that SCV's claims "relate to" an ERISA plan as such are claims for ERISA plan benefits. Relation to an ERISA plan or plan benefits is not enough and misses the point altogether, however, as several of the above-cited Florida federal court cases make clear including the decisions making up Exhibit 1. And such reality is also recognized by non-Florida federal courts. For example, in *Lone Star*, the Fifth Circuit Court held, in pertinent part, as follows:

> *Davila* was thus concerned with the situation where 'potential liability ... derives entirely from the particular rights and obligations established by the benefit plans,' i.e., coverage and benefit determinations. *Id.* Where, however, a medical service is determined to be covered and the only remaining issue is the proper contractual rate of payment, coverage and benefit determinations are not implicated and the claims are not preempted

*Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 532 (5th Cir. 2009). *See also Kelsey-Seybold Med. Grp. v. Great-West Healthcare of Texas, Inc.*, 611 Fed.Appx. 841, 841-842 (5th Cir. 2015). The Fifth Circuit Court followed that germane holding in *Lone Star* with this germane holding: "*Davila* also does not support the proposition that mere reference to or consultation of an ERISA plan in order to determine a rate of pay is sufficient for preemption." *Id.* As the *Kelsey-Seybold* court also held in relation to a carrier's "but this involves a claim for ERISA plan benefits" contention:

> but that fact is irrelevant; the question is not whether plaintiff's claims relate to benefits under ERISA plans, but rather whether adjudication of those claims requires an interpretation of an ERISA plan. Great–West has not shown that any of Kelsey's claims concern 'the *right* to payment under the terms of the benefit plan,' as opposed to 'the *rate* of payment as set out' in the parties' contractual agreement. *Lone Star*, 579 F.3d at 533. Thus, Great–West has not satisfied its burden to establish federal jurisdiction.

*Id.* at 841. *See also Plastic Surgery Ctr. v. Aetna Life Ins. Co.*, No. 18-3381, 2020 WL 4033125 (3d Cir. Jul. 17, 2020) (noting that a mere "relation to" an ERISA plan misses the point, and also noting that the Third Circuit's decision squares with most other jurisdictions, including the Eleventh Circuit Court. In this Third Circuit case, a separate provider / carrier payment agreement was at issue and underpayment was claimed by the provider, just as here *via* the likes of the PMCS re-pricing contract highlighted by SCV in the Complaint or the mystery Optum re-pricing contract that is noted at the end one of the EOBs attached as Exhibit B to the M2D, and *via* SCV's pure underpayment allegations. In sum, here, hardly any reference to the ERISA plan (that is supposedly represented by Exhibit A of the M2D) will need to occur in order to determine what re-pricing contract / formula should apply because all such re-pricing contracts / formulas at play in the instant case (on either side of the versus sign) are separate from the ERISA plan document itself. Back to this Third Circuit case for a moment. *This Third Circuit case makes a great point that ERISA was not designed by Congress to protect medical providers and that ERISA preemption cannot be said to apply to a party not "protected" by ERISA, as such would leave the medical provider community in an unpalatable conundrum to just sue patients and comprise the doctor-patient relationship.*

*Bay* Court's language, "the gist of [SCV's] complaint is that it was not *fully* compensated for th[e] services [provided to the patient] pursuant to Florida law," meaning no ERISA preemption (defensive or complete).

### E.     The Complaint Sufficiently Alleges Exhaustion Of Administrative Remedies

For the reasons discussed above, Plaintiff's state law claims (Counts II-VI) are not and should not be construed as claims governed / preempted by ERISA. Again, the only claim in the Complaint subject to ERISA (*i.e.*, requiring a true "relation to" the ERISA plan document itself) is the administrative penalty claim (Count I). In making the failure to exhaust argument, the M2D is necessarily wrongly classifying all of Plaintiff's claims as claims governed by ERISA. This argument by Defendant fails for the reasons stated above, namely the "rate of payment" exception to ERISA preemption.

Nevertheless, SCV alleges sufficient facts, all of which must be accepted as true at this stage, showing that it exhausted administrative remedies and appeals. *See, e.g.,* [D.E. 1] at ¶¶ 14-15, 19-21, 24.[8] And Defendant cannot possibly be allowed to get away with a 60-day second level appeal limit prescribed by an insurance policy that Defendant secreted from SCV until attaching such to the M2D – such would be the epitome of sandbagging and / or anti-justice.

### F.     Counts II-V Do Not Fail To State A Claim

Defendant argues that Plaintiff's contract causes of action (Counts II-III) fail to state a claim because of Defendant's purported lack of privity – not so, as succinctly stated in the

---

[8] Plaintiff's reference to its exhaustion of the pre-suit appeal process "to the best of its ability," [D.E. 1] at ¶ 24, is simply a statement that, due to Defendant's failure to provide any administrative records and / or plan documents, it was unaware of anything further that could be done and that the pre-suit measures it undertook were handicapped by Defendant's legally and contractually repugnant evidentiary shell game.

above "Introduction" section and as determined by this Court in the rulings making up Exhibit 1. Defendant further argues that Plaintiff's unjust enrichment cause of action (Count IV) and *quantum meruit* cause of action (Count V) fail to state claims because of a purported lack of conferral of benefit. To save a great deal of time, SCV incorporates fully herein by reference Exhibit 1. Judge Conway, Magistrate Judge Porcelli, Judge Berger, Magistrate Judge Hoffman, and Judge Byron have all determined quite recently that identically pleaded causes of action in other matters involving SCV and undersigned counsel are not dismissible – Counts IV-V are adequately pleaded as this Court has very recently confirmed (*see* Exhibit 1).

And the conferral of benefit debate is premature anyway. *See, e.g.,* Ex. 1; *Nordt v. Colina Ins. Ltd.*, No. 17-21226-CIV-ALTONAGA-Goodman, 2017 WL 4225550, \*7 (S.D. Fla. Sept. 22, 2017); *see also, e.g., Baycare Health System, Inc. v. Medical Savings Ins. Co.*, No. 8:07-cv-1222-T-27TGW, 2008 WL 792061, \*9 (M.D. Fla. Mar. 25, 2008) (citing, *inter alia*, *Naples Comm. Hosp., Inc. et al. v. Medical Savings Ins. Co.*, 2:04-CV-280-FTM-29SPC (M.D. Fla. Jul. 30, 2004) and *Lee Memorial Health System v. Medical Savings Ins. Co.*, 2:04-CV-445-FTM-33DNE (M.D. Fla. Sept. 20, 2005)).

As to the *quantum meruit* cause of action, in *Baycare*, this Court held that "a contract implied-in-fact is also stated when the Defendant knew that services were being rendered and both sides intended for compensation to be paid." *Id.* at \*8 (internal citation omitted). This *Baycare* Court further determined that formation of an implied-in-fact contract does not require the Defendant to be the recipient of the services or to request the services. *Id.* (internal citations omitted). The *Baycare* Court also determined that "uncertainty regarding the amount of compensation due under an implied-in-fact contract is not a basis to dismiss the claim. *See*

16

*Eskra v. Provident Life & Accident Ins. Co.*, *supra*, 125 F.3d at 1413 (where the existence of the implied-in-fact contract is clear, but the terms of compensation are unspecified, a jury is empowered to award a reasonable amount of compensation)." *Id.*

Here, the evidentiary record will show (when it is time in this case to look at the evidentiary record, rather than Complaint allegations to be taken as true) that the patient (J.R.F.) requested the services. And the Complaint alleges that services were rendered. *See, e.g.*, [D.E. 1] at ¶ 8. It matters not to whom services were rendered for an implied-in-fact contract to be formed, it just matters that the Defendant knew of the services, which was the case at all times pre-service … as the evidentiary record will show, there was a pre-service request here, just as there was in *Baycare*, and UHC authorized myriad aspects of the subject J.R.F. procedure. From that and / or its course of dealings with UHC, SCV reasonably expected to be paid by Defendant for the subject medical services and Defendant knew as much. At all times post-service, Defendant knew of the services and SCV's expectation to be properly paid. *See, e.g.,* [D.E. 1] at ¶¶ 9 (claim package submitted), 12 (UHC's tendering of partial payment), ¶ 22 (setting forth the bases for SCV's payment amount expectations), ¶¶ 9, 14-15, 19-21 (SCV's myriad letter and appeal requests for Defendant to pay the proper amount). Just as in *Baycare* and several (if not all) of the recent decisions contained in Exhibit 1, SCV has pleaded enough in relation to its quantum meruit (implied-in-fact contract) cause of action.

**G.**    ***Plaintiff's Section 627.64194 Cause Of Action Sufficiently States A Claim***

The M2D argues that SCV's claim in Count VI fails to state a claim for violation of Section 627.64194 of the Florida Statutes for reasons going to pleading deficiencies. Specifically, the M2D argues that Count VI should be dismissed because Plaintiff has not

pleaded two of the essential elements of that claim in the non-emergency context. In this regard, the M2D argues that a claim under Section 627.64194 of the Florida Statutes requires that (1) Plaintiff must have provided covered nonemergency services in a facility that has a contract for the nonemergency services with the insurer, and (2) Plaintiff provided the nonemergency services when the insured did not have the ability or opportunity to choose a participating provider at the facility who was available to treat the insured. Contrary to Defendant's argument, this is not how the statute is written and the Complaint clearly pleads sufficient facts to entitle SCV to plausible relief under this statutory provision.

Defendant's interpretation of Section 627.64194 is a misread of the plain language of the statute. As to the ***insurer***, the statute says "[a]n insurer is solely liable for payment of fees to a nonparticipating provider of covered nonemergency services provided to an insured in accordance with the coverage terms of the health insurance policy." Fla. Stat. § 627.64194(3). That is where the statute stops in relation to the ***insurer***. The statute goes on (in Sections 627.64194(3)(a)-(b)) to specify that the ***insured*** is only obligated to pay the medical provider "copayments, coinsurance, and deductibles" when the circumstances of Subsections (3)(a) and (3)(b) are present. *See id.*

The statute's language pertaining to the insurer and the insured (which precedes the modifiers, subsections (3)(a) and (3)(b)) is disjunctive in that such is separated by a comma and the word "and." If the legislature had intended for subsections (a) and (b) to apply to both the insurer and the insured (rather than just the latter), then there would have been no need for the comma. Words and punctuation count when it comes to statutory interpretation. A canon of statutory construction called the rule of the last antecedent is what undersigned is getting at.

In *Lockhart v. United States*, this statutory language (in pertinent part) was under consideration by the United States Supreme Court: "or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." *See Lockhart v. U.S.*, 136 S.Ct. 958 (2016). The Supreme Court had to decide whether "involving a minor or ward" modified "aggravated sexual abuse" and "sexual abuse" in addition to "abusive sexual conduct." Employing the canon of statutory construction called "the rule of the last antecedent," the Supreme Court decided that "involving a minor or ward" only modified "abusive sexual conduct." Part and parcel with the analysis was this reality – had the legislature intended for "involving a minor or ward" to modify all three preceding phrases (rather than just the immediate preceding phrase "abusive sexual conduct"), the legislature would have put a comma between the words "conduct" and "involving."[9]

Here, the comma situation is reversed. Here, had the legislature wished for subsections (a) and (b) to modify preceding statute language concerning the insurer in addition to language concerning the insured, the legislature would not have employed a comma in the following language: "… health insurance policy, and such insured … ." Common English and syntax make clear that the use of a comma followed by the word "and" starts a new thought. Put differently, common English and syntax make clear that another way of accomplishing a comma followed by the word "and" is to just start a new sentence. When you do not want to start a new thought (or a new sentence), you do not put a comma in front of "and." Here,

---

[9] Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma. *See, e.g., Finisar Corp. v. DirectV Group, Inc.*¸ 523 F.3d 1323, 1336 (U.S. Ct. App. Fed. Cir. 2008) ("when a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents," internal Second Circuit Court citation omitted).

common English and syntax and the rule of the last antecedent make clear that the legislature intended to start a new thought by way of its employing " … , and … ."  The legislature's use of punctuation (bolstered by the rule of the last antecedent) make clear that subsections (a) and (b) only modify the preceding statute language concerning the insured (not the insurer).

Here, Section 627.64194 plainly states that UHC is "solely liable for payment of fees to a nonparticipating provider of covered nonemergency services provided to an insured in accordance with the coverage terms of the health insurance policy." *Id.* at Subsection (3). That is where the statutory language concerning the insurer stops (given the usage of "… , and …").

As it concerns the only Section 627.64194 language relating to the insurer (which, again, is not the subsections (a) and (b) language pertaining to only the insured), the Complaint contains sufficient averments; *i.e.*, states a claim. All counts of the Complaint and the related common allegations are about Defendant's liability for failure to pay SCV's medical fees. The pre-conditions and / or factors that Defendant contends to be salient refer only to recovery by the medical provider from the insured, which the statute defines as the "person who is covered under an individual or group health insurance policy…." Fla. Stat. §627.64194(1)(c). In other words, what Defendant contends to be essential allegations to meet statutory pre-conditions do not apply and are not required to be pleaded by the medical provider. This is made clear by the plain statutory language (" … , and …") and / or the canon of statutory construction that is the rule of the last antecedent.[10]

---

[10] The rule of the last antecedent is not without boundaries. For example, the rule of the last antecedent cannot violate commonsense. Here, there is nothing illogical or non-commonsensical to Plaintiff's statutory interpretation. To the contrary, Plaintiff's interpretation of the subject statute is bolstered by common English and syntax – when a comma is followed by the word "and," it signals the start of a new thought that could have been accomplished by the start of a new sentence.

Additionally, Section 627.64194(4) specifies the applicable reimbursement rate methodology *via* Section 641.513(5), which such reimbursement rate methodology is also at issue in this pure pricing dispute. As alleged in the Complaint, Defendant's claim underpayment payment decision did not adhere to the reimbursement rate methodology required by the Florida Statutes in Section 627.64194(4) and (5), which refers to Section 641.513(5) as the reimbursement methodology required by statute. Simply put, the Complaint alleges plausible claims for relief under the statute.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, respectfully requests entry of an Order **(1)** denying Defendant's M2D [D.E. 19] in its entirety,[11] **(2)** compelling Defendant to answer the Complaint posthaste, and **(3)** awarding SCV any other relief the Court deems equitable, just, or proper.[12]

Respectfully Submitted,

**CALLAGY LAW, P.C.**

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Florida Bar No. 41103
1900 N.W. Corporate Blvd., Suite 310W
Boca Raton, FL 33431
(561) 405-7966 (o); (201) 549-8753 (f)
jgreyber@callagylaw.com
hcasebolt@callagylaw.com
*Attorneys for Plaintiff*

---

[11] If the Court somehow sides with Defendant on any of its M2D arguments, SCV respectfully requests opportunity to amend the Complaint; *i.e.*, would request that no aspect of any (part or whole) dismissal be with prejudice.

[12] SCV objects to any Defendant request for oral argument. Such is unnecessary. The issues are clear, simple, and adequately briefed. Just as in all the similar cases that make up Exhibit 1, this briefing can be fairly and fully decided on the papers, thereby preserving the resources of SCV and the Court.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 29, 2020, I electronically filed the foregoing documents with the Clerk of the Court by using CM / ECF. I also certify that the foregoing document is being served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jeffrey L. Greyber

**Jeffrey L. Greyber, Esq.**
